## White and Schnebly's Case.

In a proceeding by summons against one resident partner, and foreign attachment against the non-resident partner, under the seventy-second and subsequent sections of the Act of 13th June 1836, the partnership property cannot be taken under the foreign attachment; the separate property of the non-resident partner, only, is so liable.

THIS was an appeal from the decree of the court below, ordering the money paid into court by the sheriff, being the proceeds of sale under certain executions against the partnership property of Jacob R. White & David H. Schnebly, partners in trade, under the firm of White & Schnebly, to be paid to the execution creditors, by Alexander Wilson, assignee of said White & Schnebly.

The facts of the case were, that Thomas M'Kenzie issued the process of summons and attachment against White & Schnebly, May 14, 1838. The writ commanded the sheriff " to summon Jacob R. White to appear on the third Monday of June next, to answer the plaintiff of a plea of trespass on the case," &c., and to " attach the said David H. Schnebly, a non-resident of Pennsylvania, and resident of Maryland, by all and singular his goods and chattels, in whose hands," &c. The præcipe ordered " summons case against the defendant White, and foreign attachment against the defendant Schnebly, (a non-resident,) by all and singular his goods and chattels, in the hands or possession of T. S. Clarke & Co., and summon said Clarke & Co. as garnishees." The sheriff executed this writ May 4, 1838, by serving a summons on White; and, as to Schnebly, by serving a copy on Clarke & Co., and summoning them as garnishees, and attached in their possession eight boxes of merchandize and eleven hogsheads of sugar. On the same day Daniel Schnebly issued similar process, which was executed on the same day, and the proceedings were similar. Awards of arbitrators were had in both cases September 11, 1838, for the respective plaintiffs, and writs of *fieri facias* issued to October term 1838.

Richard S. Marriott and Richard S. Hardesty, trading under the

x.—T*

firm of Marriott & Hardesty, issued similar process against the same defendants May 22, 1838, which was served in the same manner, as to Schnebly. There was a return of *non est inventus* as to White, for whom there was no appearance. Judgment against Schnebly, December 20, 1838, liquidated January 19, 1839, at 414 dollars and 64 cents.

William Swan for the use of Christian R. Hainecker and Albert Schumacher, issued similar process to July term 1838, served as to Schnebly May 22, 1838; *non est inventus* as to White. Judgment February 11, 1839, and liquidation same day, at 616 dollars and 38 cents.

David H. Schnebly, one of the defendants, executed a power of attorney to his partner to assign, June 1, 1838, which was proved by the subscribing witness June 4, 1838. On May 28, 1838, White & Schnebly, by Jacob R. White, made an assignment to Alexander Wilson, (reciting a power of attorney from White,) of all the property, estate, effects, goods, chattels, rights and credits of the firm which they then held in partnership, real, personal, and mixed, in trust to sell the same; and, after deducting expenses, to pay all debts due by said firm, and all just claims and demands upon the same; provided, the creditors, within ninety days, released the persons of said White and Schnebly from any further arrests on account of any debts, demands, or claims upon the said firm of White & Schnebly. Any property that the said White & Schnebly may hereafter acquire, or may now hold in severalty, to remain liable for the said debts, demands or claims, as if the said release were not made. And provided also, that those creditors of the said firm of White & Schnebly who have issued, or may hereafter issue legal process against the said White & Schnebly, or either of them, for or on account of debts due to the said firm of White & Schnebly, or who may have instituted, or may hereafter institute, legal proceedings in any court of justice against said White & Schnebly, or either of them, for or on account of the debts due by said firm, shall not receive any part of the proceeds aforesaid under this clause, until after those creditors aforesaid shall be paid in full; unless the said creditors, issuing or instituting legal process or proceedings as aforesaid, shall discontinue and abandon such legal proceedings within sixty days from the date of these presents.

3. In the third place, to apply the residue, after payment of the claims aforesaid, to the payment of the just claims of those creditors of the firm of White & Schnebly, who fail or refuse to comply with the conditions set forth in the second clause aforesaid.

4. To pay over the surplus, should there be any, after payment of their claims aforesaid, to the said White & Schnebly, severally, in equal proportions, or their legal assignees. And the said party of the first part, doth hereby nominate, ordain, constitute and appoint the said Wilson their attorney, for them, and in their names and stead, to demand, sue for, prosecute and recover, all demands

[White & Schnebly's Case.]

or claims, due or belonging to the said firm, and to do all in their name, that may be necessary to give full effect to the foregoing assignment. And the said party of the second part, doth hereby accept and undertake the trust aforesaid, and covenant to execute faithfully, all matters and things to be by him done according to the premises.

This was acknowledged by Alexander Wilson, before Alderman Down, May 28, 1838, and by White, for self and partner, before John Hutchinson, justice of the peace, in Franklin county, June 8, 1838. It was duly recorded in Allegheny and Franklin counties, and bond filed by the assignee, with surety approved by the court.

A doubt existing as to who was entitled to the possession of the goods attached and assigned, and it being desirable that the said goods might be sold without the expense and loss arising from the delay of a legal determination of the matter, it was agreed that the goods should be sold by the sheriff, on the execution issued in the cases of Daniel Schnebly, and of M'Kenzie against White & Schnebly, and the proceeds of sale should be brought into court, to be distributed by the court according to any decree which should be made thereon. On a case stated, or where there is a disagreement as to facts, an issue shall be joined, and the proceeds should be distributed according to the legal rights of the respective claimants, subject to an appeal or writ of error, as the case may require.

August 14, 1839, the court decreed that the money be distributed to the attaching creditors, according to priority of lien, and if any remains, then to the assignee.

Alexander Wilson, assignee, appealed to the supreme court, and assigned as ground of reversal of the decree, that the court erred in decreeing the proceeds of sale to the attaching creditors, inasmuch as the effects of Schnebly alone were attached, and his separate interest, and not that of the firm of White & Schnebly, was the subject of this proceeding *in rem*. The whole interest of the firm having been assigned to Alexander Wilson, before such interest was subject to any lien of the creditors, he was entitled to the proceeds of sale under the agreement filed.

*Findlay*, for the appellant, contended, that the court below ought to have awarded the proceeds of sale of the partnership effects to the assignee of the partners, the assignment being made previous to the issuing of the execution and levy and sale thereon. The act of assembly of the 13th June 1836, by which the foreign attachment law is altered and re-enacted, does not apply to the case of partners in trade. That is obvious, from referring to the 70th and subsequent sections. The 70th section only embraces cases where two or more persons are not jointly, but rest severally liable to the suit of another; and the writ prescribed commands the sheriff to summon one and attach the other, " by all and singular his goods and chattels." The 72d section authorizes the plaintiff

[White & Schnebly's Case.]

to proceed thereon against the defendants named in the summons or *capias*, in like manner, and with like effect, as if one writ or *capias* had been issued against all the defendants, and to proceed against the defendants named in the clause of attachment, and their estate or effects seized or bound thereby, in the manner provided where all the defendants are attached. The 73d section authorizes the plaintiff to levy his judgment or the residue thereof of the goods and effects remaining, subject to the attachment only where the defendants appearing have nothing, or not sufficient to levy the attachment. Though by the 74th section the court may award execution in the first instance, against the goods or effects of the defendant attached, saving nevertheless to the defendants, their respective rights and claims against each other in that behalf. That these sections were intended to apply only to the cases of joint debtors, or if applicable to partners, only to levy the separate estate of the non-resident partner, is apparent as well from the remarks of the commissioners who reported the code, as from the structure of the clauses in the act and the reason of the thing itself. They say, " the 72d and six following sections, are suggested with the view of removing difficulties that occasionally happen in practice, where there are two or more joint debtors, and one or more of them are not liable to a foreign attachment. In such cases it sometimes happens that the resident defendants are insolvent, and as the plaintiff cannot proceed against the absent defendants by attachment, under the existing practice, his remedy is not adequate." They could not therefore mean the provisions to apply to the case of partners where one is resident, and in possession of the partnership effects; for there the remedy is adequate, it being settled that in a suit against partners, for a partnership debt, on a judgment against one, the whole partnership effects may be levied in execution and sold. Taylor *v.* Henderson, 17 *Serg. & Rawle* 457. There is, therefore, no need of the act for such a case as the present; the plaintiff's remedy is as complete against the partnership property as that of any partnership creditor. The defect was that the joint debtor, or partner's separate property, was not subject to execution, where he was non-resident, on a judgment against the resident partner, and to that alone the act was intended to apply. Any separate property of Schnebly might have been comprehended within the writ of attachment, and if it had been, in case of deficiency in the partnership funds, might have been applied to the plaintiff's claim, subject to the claims of others. But that is not the case before us; partnership property alone was attached, and to that we say the act of assembly never was intended to apply.

He also cited 2 *Pet.* 662, *per Story, J.;* 2 *Rev. Code of New York,* 1828, *page* 3; 16 *Johns.* 102; 14 *Johns.* 217; 6 *Johns. Ch.* 186; 1 *Wend.* 311.

*Baird* and *Lowry,* after suggesting that the assignment was

void, because the power of attorney was subsequent to it, stated that they did not rely on this, but contended that the act of assembly fairly embraced a case like the present, and was intended to give a remedy against partners; they were within the words and meaning of the law. They urged that the remedy given by the law, as stated in the remarks of the commissioners, was not wanted, because before the law, the separate property of one partner might have been levied by foreign attachment, though one of them was resident, notwithstanding what they say on the subject. The object of the act was to enable the plaintiff to combine in one suit a proceeding against the resident partner with one against the absent partner, and to give a creditor the preference that might be obtained by levying a foreign attachment on the partnership effects. They cited 8 *Mass. Rep.* 566; *Willis* 467; 16 *Ven. Ab.* 245; 2 *Mad.* 279; 5 *Johns. Ch.* 70; 1 *Penn. Rep.* 198; 5 *Whart.* 125; 5 *Paige* 30; 2 *Conn. Rep.* 517; 11 *Vez.* 78; 9 *Greenleaf* 28, 113.

The opinion of the court was delivered by

SERGEANT, J.—Though at the first impression the provisions of this act, in the 70th and following sections, seem to apply to the case of partnership property, and to render that liable to the attachment levied on the absent partner, at the same time that a summons or *capias* is served on the other partner, yet from a full and careful consideration of the law, we are satisfied that it was not intended for such a case. The defect which the law seems to have intended to remedy was, that in a suit against two joint debtors, of whom one was absent, if a summons or *capias* were served on the other, and judgment rendered against him, the separate property of the debtor not served, could not, by our ordinary mode of proceeding, be levied by execution, nor could it originally have been levied on by attachment, because one defendant being resident, attachment would not lie in the joint suit. But there was no defect in regard to the partnership property in such case, for it was clear that on a judgment against one partner, for a partnership debt, obtained in a suit against both by a partnership creditor, the partnership property could be levied on by execution, and applied to the payment of the partnership creditor. There was no need of any amendment of the law in this case to help the creditor; he had the same remedy that he had in other cases, as to the partnership property. But the defect was in the creditor's disability to take the separate property of the non-resident partner, and it is for this purpose the act enables him to join in the suit, a summons or *capias* against the resident partner, (which would reach his separate property and also the partnership,) and an attachment against the separate effects of the absent partner to make them ultimately responsible, unless discharged by appearance or otherwise. This places partners, where one is absent, on the same footing as those are of which all the members of the firm are present; whereas the construction con-

tended for by the appellees, would subject the property of every partnership, where one of the firm was non-resident, to be seized at once by attachment, though the others were here ready to answer to process against the firm. Besides the 73d and 74th sections seem to contemplate this construction. The former makes the property of the defendant appearing, (which embraces the partnership as well as his own,) liable before the property attached: and the 74th section authorizes, if the court see cause, an execution in the first instance against the property attached, saving their respective rights in it as to each other, considering it as something distinct from the partnership property.

Decree reversed, and decree made accordingly.